■ HEALTH INSURANCE PLAN OF GREATER NEW YORK, Appellant-Respondent, v PHOTOBITION NEW YORK, INC., Respondent-Appellant, et al., Defendants. [884 NYS2d 713]—

Order, Supreme Court, New York County (Herman Cahn, J.), entered on or about February 6, 2008, after a nonjury trial, finding that, although plaintiff established a breach of the parties' sublease by defendant Photobition New York, Inc., it failed to establish that it sustained damages, unanimously reversed, on the law, without costs, both the finding that defendant breached the sublease and the award of attorneys' fees to plaintiff vacated, defendant, as the "successful party," awarded attorneys' fees, and the matter remanded for a determination of the reasonable amount of those fees.

Pursuant to a lease entered into in 1998, and amended in May 1999, defendant's predecessor rented several floors of an office building, including a portion of the 16th floor, from the landlord, Greeley Acquisition LLC. Thereafter, on April 2, 2002, plaintiff and defendant entered into a sublease, conditioned on Greeley's consent, for the 16th floor space, the term of which was coterminous with the prime lease. Because of market condi-

tions at the time, defendant sublet the 16th floor space for less than the amount of rent it was required to pay under the prime lease. Plaintiff occupied the 16th floor space under the sublease and, pursuant to its own lease with the landlord executed in April 1998, other floors of the building. Section 27 (a) of the sublease requires plaintiff's prior written consent before defendant voluntarily terminates the prime lease "or enter[s] into a modification or amendment thereof in a manner that would adversely affect [plaintiff]."

On or about May 13, 2002, Greeley, plaintiff and defendant executed a consent to sublease (the consent). The consent states that "[i]n the event [Greeley] shall come into possession of or acquire the leasehold [interest] . . . as a result of the termination of the [prime lease] or as a result of any other means," Greeley agrees, subject to a proviso, that plaintiff "shall not be disturbed in its possession of the Sublet Premises, its rights as Subtenant under the Sublease shall not be affected" and "no action or proceeding shall be commenced to evict or remove Subtenant for any reason." The proviso specifies that plaintiff "assumes all obligations of [defendant] as Tenant under the [prime lease] with respect to the Sublet Premises, including without limitation," defendant's obligation to pay the rent set forth in the prime lease. In addition the consent states that plaintiff "hereby acknowledg[es] that such obligations exceed its obligations under the Sublease."

In December 2002, defendant made a release payment of $1 million to Greeley when it surrendered a portion of its leasehold interest, including the sublet premises. According to defendant, the payment was intended in part to cover the difference between the rent under the prime lease for the surrendered premises and the lower rent specified both in the sublease with plaintiff and in a sublease between defendant and a nonparty to this action for other space in the building. The $1 million payment was made pursuant to a written agreement, denominated the "Fourth Amendment and Partial Surrender of Lease" (the surrender agreement), dated December 12, 2002, which states that Greeley "shall deliver to each of the Subtenants an Attornment Agreement . . . confirming the rights and obligations of [Greeley] and the subtenants" pursuant to, in relevant part, the terms of the consent. The surrender agreement also states that in the event plaintiff failed to execute the attornment agreement, Greeley could elect to deem the termination of the prime lease with respect to the premises sublet to plaintiff an "assignment in lieu of such termination" pursuant to which Greeley would be granted all of the rights of defendant under the sublease.

Notwithstanding defendant's belief that the $1 million payment operated to extinguish any claim by Greeley for the higher rent specified in the prime lease, but consistent with the terms of the consent and the surrender agreement, the attornment agreement Greeley sent to plaintiff immediately after execution of the surrender agreement required payment of the higher rent. By letter dated January 24, 2003, plaintiff advised Greeley that it was aware of the $1 million payment and asserted that it was "not obligated to pay rent that has been pre-paid [by defendant]." By letter dated February 4, 2003, Greeley reiterated its position that the terms of the consent required plaintiff to pay the greater rent specified in the prime lease.

Thereafter, plaintiff continued to pay the same rent it had paid to defendant as its subtenant. In December 2003, Greeley sold the building and, in turn, the new owner sold the building to another entity, Penn Tower LLC, in July 2004. Neither Greeley nor either of the subsequent purchasers of the building ever commenced an action against plaintiff seeking additional rent. Plaintiff continued to pay the sublease rent until the fall of 2004, when it obtained Penn Tower's consent to sublet all the space it was occupying so that it could relocate to downtown Manhattan and avail itself of financial incentives offered by local, state and federal agencies. At a meeting in August 2004, Penn Tower took the position that it would not consent to plaintiff subletting the space it was occupying unless plaintiff paid rent "arrearages," i.e., the difference between the sublease rent and the rent payable under the terms of the consent. On October 12, 2004, plaintiff paid Penn Tower nearly $113,000, a payment it viewed as "representing the final rent settlement and additional rent arrears" covering the sublet premises. On October 29, 2004, plaintiff and Penn Tower executed an attornment agreement pursuant to which plaintiff agreed to pay the sublease rent for the 16th floor space on a going-forward basis.

In June 2004, plaintiff commenced this action against, among others, defendant and Greeley. As to defendant, plaintiff asserted that defendant had breached section 27 (a) of the sublease by terminating the prime lease with respect to the sublet premises without obtaining its prior written consent. As to Greeley, plaintiff alleged that a portion of the $1 million paid to it by defendant was attributable to the sublet premises and that Greeley wrongfully had refused to credit any portion of the payment as an offset against the higher rent plaintiff allegedly had paid to Greeley. Greeley, however, neither answered the complaint nor appeared in the action.

Following a nonjury trial, Supreme Court issued a written or-

der, dated February 4, 2008, finding that defendant had breached the requirement of prior written consent but that plaintiff had failed to meet its burden of proving damages. In this regard, Supreme Court concluded that "it appe[a]rs that the owner was not pursuing its rights to claim the higher rent set forth in the Prime Lease," and that "[b]ut for [plaintiff]'s need to have the owner consent to its own further subletting [of] its premises, [the owner] might never have pursued its claims under the Prime Lease." After noting that plaintiff had decided to relocate to downtown Manhattan to obtain substantial financial benefits, Supreme Court noted as well that plaintiff "has been collecting rent from its own sublease of the Sublet Premises." For these reasons, Supreme Court found that plaintiff had "failed to sustain its burden that . . . it sustained damages" on account of the breach.

Nonetheless, Supreme Court went on to conclude that plaintiff's damages "are limited to attorneys' fees incurred by [plaintiff] in this action." Supreme Court relied in this regard on section 9 of the sublease, which in relevant part provides that defendant shall indemnify plaintiff "from any liability, damage, cost or expense, including . . . reasonable attorneys' . . . fees . . . , which may be imposed upon or incurred by or asserted against [plaintiff] by any person, corporation or other entity by reason of any . . . acts, omissions . . . or negligence of [defendant] . . . in or about the Subleased Premises or the Building . . . [and] any injuries to persons or damage to property occurring in, on or about the Subleased Premises." Supreme Court referred to a Special Referee the issue of the amount of the reasonable attorneys' fees plaintiff was entitled to recover.*

Defendant's voluntary surrender of the sublet premises (and other but not all floors it rented under its own lease with the landlord) in December 2002 constituted a "modification" or amendment of the prime lease within the meaning of section 27 (a) of the sublease. The requirement of prior written consent under section 27 (a), however, was not breached when defendant modified or altered the prime lease in December 2002,

---

* Plaintiff subsequently moved, pursuant to CPLR 4404, for an order modifying the February 6 order with respect to the finding that it had failed to prove damages. Defendant cross-moved, also pursuant to CPLR 4404, seeking to modify the February 6 order to the extent of vacating the award of attorneys' fees to plaintiff and awarding attorneys' fees to it pursuant to section 3 (l) of the sublease, which entitles the "successful party" in "any action [commenced] . . . under th[e] Sublease" to recover, inter alia, reasonable attorneys' fees. Supreme Court denied both motions. That order is not before us on this appeal.

because plaintiff had already stipulated in the May 13, 2002 consent that it would pay the higher rent in the event of a termination or modification of the prime lease. By its specific terms, the sublease was contingent upon the consent of the landlord. The consent, which plaintiff as well as defendant and the landlord signed, provided that plaintiff would assume all of defendant's obligations under the prime lease, including defendant's obligation to pay the higher rent, in the event the landlord "c[a]me into possession of . . . the leasehold [interest] of [defendant] to the Sublet Premises as a result of the termination of the [prime lease] or as a result of any other means." Thus, the consent constitutes the very consent contemplated by section 27 (a). Moreover, plaintiff did not and cannot show that it was "adversely affect[ed]" within the meaning of section 27 (a) of the sublease when it consented to pay the higher amount in the document that effectively made the sublease inoperative. We note that the consent contained an integration provision and expressly provided that in the event of a conflict between the consent and the sublease, "th[e] Consent shall prevail in each instance." Thus, plaintiff failed to establish that defendant breached the sublease.

As the "successful party" in this litigation, defendant is entitled to attorneys' fees pursuant to subdivision (1) of section 3 of the sublease. Accordingly, we remand for a determination as to the reasonable amount of those fees. Concur—Gonzalez, P.J., Buckley, Catterson, McGuire and Renwick, JJ. [*See* 2008 NY Slip Op 30961(U).]